CITY OF BATTLE CREEK, NEBRASKA, APPELLANT,
v. MADISON COUNTY BOARD OF ADJUSTMENT, APPELLEE.
609 N.W.2d 706

Filed May 2, 2000.   No. A-99-053.

David H. Ptak, of Stratton & Ptak, P.C., for appellant.

Joel E. Carlson, Deputy Madison County Attorney, for appellee.

IRWIN, Chief Judge, and HANNON and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

The City of Battle Creek, Nebraska, appeals from the decision of the district court for Madison County, Nebraska, in which the district court affirmed the granting of a zoning variance by the Madison County Board of Zoning Adjustment (Board). For the reasons set forth below, we reverse, and remand to the district court with direction to reverse the decision of the Board.

## BACKGROUND

On January 27, 1998, the Board, sitting as the board of adjustment for Battle Creek, granted a variance to Mike and Judy Warneke for construction of a garage on their residential lot. The Warnekes were seeking a variance of 11 feet 6 inches from the 20-foot setback required by the applicable zoning rules. Judy Warneke (Warneke) had testified before the Board and stated that the lot owned by the Warnekes is bordered by platted streets on three sides, creating a unique situation involving essentially "three front yards." The record shows that the property is bordered by Martin Street on the south, Dittrick Street on the north, and Green Acres Drive on the east. At the time of the hearing, Green Acres Drive, although platted, had not been developed; the site was described as pastureland. According to Warneke, since the applicable zoning regulations provide for a minimum 20-foot setback for each front yard and there was insufficient

space behind the house, the Warnekes could not build the garage without a variance.

The mayor of Battle Creek, Mervin Schneider, also testified at the hearing. He stated that the city council was concerned that the variance might set a precedent that would have a negative effect on future development of Battle Creek. Specifically, he stated that it was possible that future growth might require the development of Green Acres Drive and that the granting of a variance to the Warnekes might have a detrimental effect on development of adjacent property and make it difficult to deny future variance requests. Another resident of Battle Creek, a "Mrs. Alvin Schreve," appeared briefly to inquire about the project.

The Board ultimately granted the variance on a unanimous vote. Battle Creek appealed to the Madison County District Court. That court took no testimony, but accepted into evidence 19 exhibits, including a transcription of the proceedings before the Board. On December 18, 1998, the district court entered an order modifying the findings of the Board to reflect the following:

> From a review of all of the facts . . . (a) The strict application of the zoning regulation in the present case would produce undue hardship; (b) such hardship is not shared generally by other properties in the same zoning district and the same vicinity; (c) the authorization of such variance will not be of substantial detriment to adjacent property and the character of the district will not be changed by the granting of the variance; and (d) the granting of such variance is based upon reason of demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit or caprice. The Court further finds that the condition or situation of the property concerned or the intended use of the property is not of so general or recurring a nature as to make reasonably practicable the formulation of a general regulation to be adopted as an amendment to the zoning regulations.

The district court then affirmed the findings as modified. Battle Creek filed the instant appeal on January 14, 1999.

## ASSIGNMENTS OF ERROR

Battle Creek generally complains that the decision by the Madison County District Court was illegal, not supported by the evidence, and accordingly, arbitrary, unreasonable, and clearly wrong. Specifically, Battle Creek asserts that the district court erred in finding that granting the variance was warranted because a hardship existed and that the situation presented by the Warnekes' property was not such as would require amendment of the zoning regulations.

## STANDARD OF REVIEW

In reviewing a decision of a board of adjustment, an appellate court reviews the decision of the district court, and irrespective of whether the district court took additional evidence, the appellate court is to decide if the district court abused its discretion or made an error of law. *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992). Where competent evidence supports the district court's factual findings, the appellate court will not substitute its factual findings for those of the district court. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 19-910 (Reissue 1997) empowers a board of adjustment to grant a variance where the board finds that

> where by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of the zoning regulations, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any enacted regulation under this section . . . would result in peculiar and exceptional practical difficulties to or exceptional and undue hardships upon the owner of such property . . . . *No such variance shall be authorized by the board unless it finds that: (a) The strict application of the zoning regulation would produce undue hardship; (b) such hardship is not shared generally by other properties in the same zoning district and the same vicinity; (c) the authorization of such variance will not be of substantial detriment to adjacent property and the character of the district will not be changed by the granting of*

*the variance; and (d) the granting of such variance is based upon reason of demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit or caprice.* No variance shall be authorized unless the board finds that the condition or situation of the property concerned or the intended use of the property is not of so general or recurring a nature as to make reasonably practicable the formulation of a general regulation to be adopted as an amendment to the zoning regulations.

(Emphasis supplied.)

The Nebraska Supreme Court has construed this statute as providing that variances should be granted only if strict application of the regulation, because of the unusual characteristics of the property existing at the time of the enactment of the regulation, would result in peculiar and exceptional practical difficulties to or exceptional and undue hardships upon the owner. *Barrett v. City of Bellevue*, 242 Neb. 548, 495 N.W.2d 646 (1993); *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992); *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955).

There is no indication in this record that the Board had any exhibits before it. The transcribed proceedings of the Board show that at the conclusion of testimony, the following proceedings occurred:

[LeRoy] Novotny [Board member]: I guess I'm gonna bring it to a head. I'll make a motion that we grant the variance.

Unknown: Due to the unusual circumstances?

[Arland] Praeuner [Board member]: Yea, due to the unusual circumstances.

Praeuner: I'll second it.

[Duane] Sellin [Board chair]: I think we need to pin point what those unusual circumstances are.

. . . .

Sellin: Due to three front setbacks requirements.

. . . .

Sellin: We have a motion and a second. . . .

. . . .

[Dawn] Maertins [executive secretary of the Board]: The motion is to approve it with the problem of the three

front yards. I'm going to word this different when I get it in there but, with the three front yards.

[Chad] Nabity [zoning administrator]: Do we want to write that motion out right now so we've got it.

Maertins: That would be fine with me.

. . . .

Sellin: Well, the reason we need to have this more or less worded correctly is if there is any complications. This group is a quasi-judicial group and it's actions are final, however, if any somebody wants to take it, they can take it to the District Court and it can go through the Court system. And, that is why we have to be sure that we get the correct wording as to why we are doing it and there are certain requirements before a variance can be granted. And, one of those particular requirements is due to the unusual circumstances which would fall in this case. While you are writing —

Some of these things: No variance shall be authorized unless the board of adjustment finds that the strict application of the resolution would produce an undue hardship. That the hardship is not shared generally by other properties in the same zoning district in the same vicinity, meaning in particular, a whole particular area, one or two would be different. . . . And the granting is based upon reasons demonstrable and exceptional hardship as distinguished from purposes of being convenient or for profit or that type of thing. So, we always have to keep those different things in mind because that's part of the state statutes.

. . . .

Nabity: Lets see, we've got a motion to approve the variance from 11 foot 6 inch setback variance, of 11 foot 6 inches to the front yard setback, due to these findings: the requirement of three front yards; front yard setbacks presents a unique situation which was not created by applicant; um, we had some others and—

. . . .

Sellin: Any other comment on the motion?

. . . .

Sellin: We do have a motion which was made and seconded. With this wording to be inserted. Any further discussion on the motion? . . .

Sellin: The motion is carried and the variance is granted.

The only testimonial evidence consisted of the unsworn statements by Warneke and the mayor, Schneider, and the questions by another resident of Battle Creek, Schreve. It is clear to us, on this record, that the Board did not make findings sufficient to comply with the statutory requirements. Specifically, although the Board appears to have found that application of the zoning standard would produce hardship for the Warnekes, the Board did not make findings as to whether that hardship was "undue," whether it was shared by other properties, whether the variance was a substantial detriment to adjacent property and the community, or whether the grounds for granting that variance were based upon "demonstrable and exceptional hardship," as opposed to "purposes of convenience, profit or caprice." See § 19-910. The Board was required to make such a finding. See *Bowman v. City of York*, 240 Neb. 201, 213, 482 N.W.2d 537, 545 (1992) ("[b]oth the statute and the code define undue hardship as a 'demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit or caprice' ").

In considering the appeal from the Board, the district court took additional evidence, as is permitted pursuant to Neb. Rev. Stat. § 19-912 (Reissue 1997). The district court then modified the findings of the Board to conform with the statutorily required findings. The question before us is whether the additional exhibits contain competent evidence which supports the district court's modified factual findings. See *Bowman, supra.* We find that they do not.

Exhibit 1 is the cassette recording of the proceedings; Exhibit 1A is the above-mentioned transcription of that recording. Exhibits 2 through 7 and 9 are documents memorializing various aspects of the proceedings composing the instant appeal. Exhibits 10 through 13 are photographs of the Warnekes' house. Exhibit 14 is a schematic showing the layout of the Warnekes' property and its purported effect on the various "sight triangles" from various angles. Exhibit 15, entitled "Yard and Setback

Diagram," appears to be a generic presentation of setback requirements, and exhibit 16 is a district zoning map. Exhibits 17 and 18 are definitions utilized in the Battle Creek zoning code. Exhibit 19 is the bylaws of the Board.

Section 19-910 clearly requires that any grant of a variance be supported by evidence relating to each of the four factors previously enumerated. This record does not contain such evidence. Assuming without deciding that exhibit 14 arguably addresses the issue of adverse impact upon adjacent property, the fact remains that neither that exhibit nor any of the remaining exhibits make it possible to resolve such fundamental questions as whether the Warnekes have experienced an "undue" hardship, or whether they are seeking the variance for purposes other than "convenience, profit or caprice." Nor do any of them address the comments by the mayor, Schneider, in which he suggested that approval of the variance could have a detrimental impact on the long-term development of Battle Creek. We make no finding on those issues ourselves, but simply point out that there is insufficient evidence in this record for either the Board or the district court to have done so either.

In sum, we find that the decision of the district court is not supported by the evidence, and we accordingly reverse, and remand this matter to the district court with direction to reverse the grant of a variance.

## CONCLUSION

For the reasons set forth above, this matter is remanded to the district court for Madison County, with direction to reverse the grant of a variance by the Board.

REVERSED AND REMANDED WITH DIRECTION.